Calvert v. Marlow, surviving partner, &c.

---

CALVERT v. MARLOW, SURVIVING PARTNER, &C.

1. Where an intestate, at the time of his death, had an account with a bank, as the depositor of money, and the administrator deposited in the bank his letters of administration, which entitled him to check for the money, though he permitted it to remain there to intestate's credit: *Held*, that there was not such a

43

reception, or control of the money, as made the administrator liable, individually, to an action *for money had and received.*

2. Where one partner commingles the money of the firm with his own cash, so that it cannot be distinguished, he is chargeable *pro tanto* in an account with his copartners, as for a conversion; and if in such case the money come to the hands of the administrator of the partner converting it, *it seems,* that an action against him for money had and received, cannot be supported by the surviving members of the firm.

3. *Semble:* An action of *assumpsit* cannot be maintained by a surviving partner against the representative of a deceased copartner for the recovery of a debt due by the latter to the firm, or for money in hand at the time of his death; unless the partnership accounts have been settled, and a balance struck. The remedy in such case, is in equity.

WRIT of error to the County Court of Mobile.

The defendant in error, as surviving partner of Charles Hammond, dec'd, declared against the plaintiff, in assumpsit, for money had and received, &c. The cause was tried on the general issue, a verdict returned for the plaintiff for eleven hundred and one dollars and four cents, and a judgment was rendered accordingly. On the trial, the defendant excepted to the ruling of the court. It appears, that in June, 1841, the plaintiff and Hammond formed a co-partnership in the drug business, in the city of Mobile, and in March, 1842, the latter died; that for sometime previous to that event, the plaintiff attended almost entirely to the business of the firm: *Further,* that Hammond had been engaged in the drug business for some years previous to the formation of the partnership, but with the exception of the store and its profits, he was not known to be in possession of any property, saving one negro, which he had sold. The plaintiff also proved by the books of the branch bank at Mobile, that Hammond had kept an account there for several years, in his own name—that in June, 1840, he had upwards of $1,900 to his credit, and in June, 1841, upwards of $1,300; and that the deposits afterwards made, were made from the 10th of December, 1841, to the 18th March, 1842. The firm kept no account in the bank in the partnership name, but at the time of Hammond's death, there was $1,200 to his credit upon its books, and for the recovery of this sum, the plaintiff's action was brought. It was proved further, that the defendant had administered on the estate of Hammond, and filed his letters of administration in bank, in consequence of which, the

money was subject to his check, though it still remained in bank, charged to the credit of the intestate. The defendant prayed the court to charge the jury as follows: 1. If they believed that Charles Hammond died, leaving to his credit the amount sued for, and the same was never received by the defendant, but still remained in bank to the intestate's credit, then the plaintiff could not recover in this action. 2. That under the evidence, the plaintiff as surviving partner, could not recover in this form of action, the money collected and deposited in bank by the intestate.— 3. That if they believed the defendant received the money as the administrator of Hammond, then the plaintiff could not recover the same in this suit as a surviving partner. All of which charges the court refused to give; but charged the jury, 1. If they believed the money deposited in bank was a fund to which the plaintiff had a right as surviving partner, and the depositing the letters of administration by the defendant in Bank, was equivalent in effect to a payment of the money by the bank to the defendant, and a re-deposit by him, then the plaintiff ought to recover. 2. If they believed that the money in question was a fund to which the plaintiff had a right as surviving partner, then the fact, that it had been deposited by Hammond, and had come to the possession of his administrator, as such, would constitute no defence in this action.

J. A. CAMPBELL, for the plaintiff in error, contended that Hammond, by depositing the money in the bank to his individual credit, even conceding that it was once the property of the firm, divested the plaintiff's right to it, and amounted to a conversion of it to the depositor's use; and under such circumstances, an action for money had and received, could not be maintained. [2 Ves. Rep. 582; 6 id. 496; 11 id. 377; 1 J. & Walker's Rep. 241; 17 Wend. Rep. 94.]

DARGAN, for the defendant. The defendant below could have checked the money out of the bank; and for all purposes it must be considered as in the same predicament, as if it was in his actual possession, so as to make him liable to the present action.

COLLIER, C. J.—To maintain the action for money had and received, it is said that it must be proved that the money

came into the defendant's hands, or a state of facts must be shewn from which this is inferrable. [2 Starkie's Ev. 106; 2 Saund. on Pl. and Ev. 672.] And further, that *at the time* of its receipt, the plaintiff was entitled to it; for the reason that a chose in action is not assignable. [2 Saund. on Pl. and Ev. 673.] Let us apply these principles to the case before us. At the time of Hammond's death, the books of the bank show, that the sum of twelve hundred dollars was there remaining to his credit, it was also proved that the defendant administered on his estate, and deposited the letters of administration in the bank; upon the authority of which, he might have checked out the money, though it was still standing to intestate's credit. These facts, so far from showing a receipt of money by the defendant, positively negative the fact.— True, he may, if he think proper, withdraw the amount of his intestate's deposit from the Bank, yet until he does so, he cannot be said to have received it. The fact that the plaintiff claimed the money as belonging to the firm, of which he was surviving partner, may have prevented its withdrawal by the defendant, so as to leave the plaintiff to controvert the right to it with the bank. If the intestate had made an individual the depository of his money, who upon the defendant's becoming administrator, promised to pay it to him when requested, could the plaintiff have maintained an action previous to its actual receipt? The case supposed, is really more favorable to the plaintiff than the case made by the record; for there, it is conceded there was a promise to the administrator, but here, there is a mere regulation of the bank, subject to modification by its directory. It is difficult to conceive why the deposit in the bank should be regarded as cash until the defendant had withdrawn it, had it passed to his credit, or in some manner received the benefit of it. [Cowp. Rep. 565; 3 M. & S. Rep. 344; 5 Taunt. Rep. 657, 815.] True, banks may generally be more prompt in meeting their engagements; yet, this, it is presumed, will not be sufficient to give to their liabilities in this respect, a different consideration than is accorded to those of individuals who are equally able to make good their promises.

The action in the present case is in form *ex contractu*, and if the defendant were to die before judgment, it might at the option of the plaintiff, be revived against his personal representatives; yet, if the defendant was to resign his administration, be removed or die, the deposit now in bank would become subject to the check

of the administrator *de bonis non* of Hammond. This view in itself shows that the property in the money did not vest in the defendant by placing in bank a copy of the letters of administration; this was a mere authority to collect the choses in action of his intestate, but did not make him liable for them as cash, until, as we have seen, they were actually realized by him, or they were in some way appropriated to his use.

Again; to entitle the plaintiff to recover, conceding that his action is maintainable, should not the proof show, that the entire sum for which it is sought to charge the defendant, was the money of Hammond & Marlow, kept separate and distinct by the intestate, so as to be susceptible of identification. If the receipts of one member of a firm have been so commingled with his own cash, that they cannot be followed or distinguished, he is considered as having converted them, and is chargeable *pro tanto* in an account with his co-partners. And if such is the fact in respect to the money in question, an action for money had and received, would not lie against the defendant, although the money had actually come to his hands; for in such case he would have received it, not for the use of the plaintiff, but to enable himself to administer his intestate's estate. [Kip v. The Bank of New-York, 10 Johns. Rep. 63.]

It is true, the defendant is not sued as administrator, yet, as he is sought to be charged in virtue of the rights which are conferred upon him as such, we will inquire whether, as the representative of Hammond, he is suable at law upon the case stated in the bill of exceptions. It is said, that on the death of one partner, the survivor is entitled to all the choses in action, and other evidences of debt belonging to the firm. They must be collected in his name; and he is entitled to the exclusive custody and control of them; the books of account are incident to the debts or choses in action; and whoever is entitled to the one, is of course, entitled to the other. The right of action may be said to be transferred to the surviving partner in relation to partnership demands; but he is liable to account to the representatives of his deceased co-partner. [Murray v. Mumford, 6 Cow. Rep. 441; Case v. Abeel, 1 Paige's Rep. 398; Egberts v. Wood, 3 id. 526.] And upon the ground that the legal rights and liabilities of the firm are devolved upon the surviving partner, it has been decided that he may maintain detinue against the representatives of the deceased partner

for the books of account and other evidences of debt belonging to the partnership. [Murray v. Mumford, *supra*.]

But assuming that the plaintiff could make it appear that the money was the property of the partnership, and had not been converted, so as to prevent it from being distinguished from other cash of the intestate, and no action at law can be supported. It has been so often decided as to be no longer disputable, that an action of assumpsit does not lie by one partner against another, unless the partnership accounts be settled, and a balance struck. [Oseas v. Johnson, 1 Binn. Rep. 191; Carey v. Brush, 2 Caine's Rep. 298; Andrews v. Allen, 9 Serg't & R. Reps. 241; Westerlo v. Evertson, 1 Wend. Rep. 532; Williams v. Henshaw, 12 Pick. Rep. 378; Hobart v. Howard, 8 Mass. Rep· 304; Niven v. Spickerman, et al. 15 Johns. Rep, 401.] The law upon this point is laid down by a text writer of high authority, thus: "When money is due from one partner to another, by simple contract on the partnership account, payment except in a few special cases, can only be enforced by application to a court of equity, upon a bill filed for an account, and a dissolution of the partnership. Courts of law will not entertain suits of this nature, because it would be useless for one partner to recover what, upon taking a general account amongst all the partners, he might be liable to refund: *frustra peterit quod mox restiturus esset.* [Collyer on Part. 143. See, also, Grigsby's ex'r v. Nance; 3 Ala. Rep. 347.] The rule, it is true, may be said to have its exceptions, but the mere dissolution of the partnership, whether by death or otherwise, does not make it inapplicable; and a debt due from a deceased partner, *as a partner*, or *money* in hand at the time of his death, can no more be recovered of his administrator than it could of the intestate. To such a case, the reason of the rule applies with all force. Upon the assumption that Hammond was only liable to the plaintiff for the money of the partnership received by him, as for a debt, we think it necessarily follows, that the action was misconceived.

Without attempting to consider with particularity the ruling of the county court to the jury in the charges given and refused, it may be remarked, that it will be obvious upon the slightest examination, that the law was expounded differently from what we have laid it down. The consequence is, that the judgment is reversed, and the cause remanded.